In re George H. MITCHELL; Carol J. Mitchell, Debtors.

GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant,

v.

George H. MITCHELL; Carol J. Mitchell, Appellees.

No. 90–15952.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 1991.

Decided Jan. 21, 1992.

Jan T. Chilton, Severson, Werson, Berke & Melchoir, San Francisco, Cal., for appellant.

James J. Gold, Gold & Hammes, San Jose, Cal., for appellees.

Before GOODWIN, SCHROEDER and NOONAN, Circuit Judges.

SCHROEDER, Circuit Judge:

General Motors Acceptance Corporation (GMAC) appeals from the decision of the Bankruptcy Appellate Panel (BAP) which established the value of an automobile owned by George H. and Carol J. Mitchell. The purpose of the valuation was to determine the amount of GMAC's allowed secured claim in the Mitchells' Chapter 13 cram-down bankruptcy plan. A careful reading of the statutory language involved here, 11 U.S.C. § 506(a), and the overwhelming weight of authority support the outcome reached by the BAP. We affirm its use of the wholesale blue book valuation. We also affirm the BAP's holding that GMAC did not have a security interest in the mechanical service agreement the debtors had purchased with the car.

### FACTS

On January 14, 1987, the Mitchells bought a 1987 Cadillac El Dorado, paying $5,000 down and signing a conditional sale contract under which they agreed to pay the remaining $26,940 plus interest at a rate of 11 percent annually in 60 monthly installments of $585. The purchase price included $695 for a 60–month, unlimited mileage, mechanical service contract under

the General Motors Purchaser Protection Plan, a contract assumable by a subsequent purchaser of the car on payment of $25. The conditional sale contract gave the seller or its assignee "a security interest in the vehicle and all parts and accessories put on the vehicle" and in all insurance premiums or service contract premiums financed by the seller. On January 26, 1987, the seller assigned the contract to GMAC.

On March 4, 1988, the Mitchells filed a joint petition under Chapter 13. They proposed a plan under which they would pay their secured creditors, over time, the full value of their allowed claims, a projected total of $76,000 over 4½ years. They would pay unsecured creditors 10 percent of their allowed claims. The bankruptcy court confirmed the plan on May 11, 1988.

In April 1988, GMAC filed a claim as a secured creditor in the amount of $27,-062.25. The Mitchells objected. At an evidentiary hearing George Mitchell testified that he was a commercial glass contractor and that this business was his sole source of income for making the payments required under the Chapter 13 plan. As part of his glass business he drove to customers' places of business either in his truck or in the Cadillac.

Two expert appraisers testified as to the value of the Cadillac. The Mitchells' expert testified that as of March 4, 1988, the Cadillac had a value of $20,761, based on low, or wholesale, Kelley Blue Book values. He stated that this is what the trustee in bankruptcy could reasonably expect to receive selling the Cadillac. The expert hired by GMAC testified that on March 4, 1988, the value of the Cadillac was $24,185, based on high, or retail, Kelley Blue Book values.

The bankruptcy court chose the value proposed by GMAC. To this value the court added the value of the mechanical service contract, which the court put at its original cost of $695.

The Mitchells appealed. The Bankruptcy Appellate Panel held that the Cadillac should have been valued at its wholesale value and further held that GMAC did not have a security interest in the mechanical service contract but only an interest in any return of premiums due on cancellation of that contract.

GMAC appeals to this court.

## WHOLESALE OR RETAIL VALUATION

■ Neither the Supreme Court nor any circuit court has considered what standard should be used in a Chapter 13 proceeding to establish a creditor's allowed security interest in an automobile. The issue is a recurring one in the bankruptcy courts, so our decision is significant, at least in terms of the number of cases it may affect. The governing statutory provision is 11 U.S.C. § 506(a) which provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is *a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property*, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. *Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property*, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a) (emphasis supplied).

The legislative history of this section is scant. It states only that "[w]hile courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property." S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News pp. 5787, 5854. Here the purpose of the valuation is to determine the value of GMAC's allowed secured claim which establishes the minimum amount that must be paid to GMAC under a Chapter 13 plan pursuant to 11 U.S.C. § 1325(a)(5)(B). The use of the property is

to be by the debtor. GMAC understandably urges a retail, or higher, valuation standard, while the debtors, equally understandably, urge a wholesale valuation, which would be a lower valuation standard.

In cases posing this question, the vast majority of reported bankruptcy court decisions appear to have rejected the retail standard urged by GMAC. Cases are collected in 3 L. King, *Collier on Bankruptcy* 506.04, at 506–36 (15th ed. 1991) [hereinafter *Collier*]. The cases cited in Notes 48–52 nearly all apply the wholesale value, or a value roughly equivalent to it such as (a) "bid" market price or (b) retail price, less dealer overhead, commissions and profit. *Collier* explains that the courts in these cases are endeavoring to determine what the creditor would obtain if the creditor were to make a reasonable disposition of the collateral. *See Collier, supra,* at 506–27 to 506–36. It would appear to be the wholesale price which best approximates this value. This was the holding of the leading bankruptcy decision in this circuit, the BAP's opinion in *In re Malody,* 102 B.R. 745 (9th Cir.BAP 1989), which the BAP followed in this case.

The appellant relies principally on the statutory language calling for determination of value "in light of the proposed disposition or use of such property." The appellant contends that since the debtor intends to use the automobile, the value of the creditor's secured interest should be based upon the replacement cost to the debtor. The difficulty with this argument is that it ignores the clause of the statute that defines the value of the secured claim as the value of the "creditor's interest" in the property. One commentator has squarely and succinctly addressed GMAC's contention, noting that "[c]ourts have almost uniformly rejected this argument, emphasizing that what is being valued is the creditor's 'interest' in the collateral, not the debtor's interest." Queenan, *Standards for Valuation of Security Interests in Chapter 11,* 92 Com.L.J. 19, 30 (1987).

In holding that the wholesale value should apply as a general rule in valuing vehicles, we do not suggest that the contemplated use by the debtor in Chapter 13 or Chapter 11 proceedings should never affect the valuation of the creditor's interest. *Collier* suggests that the so-called "going concern" or "replacement cost to the debtor" is appropriate where the collateral is being used as part of a going concern and the prospects for successful reorganization are good. *See Collier, supra,* at 506–28 to 506–29. In his article on this subject, Judge Queenan offers an even narrower application of debtor's use as a factor in valuation of the secured claim. He suggests that debtor's use should affect valuation where the use is "particularly beneficial," as for example when the collateral is being used in the debtor's hands in a more profitable way than it would in others' hands, or where the use is "particularly detrimental" to its value, as for example when the debtor is using the collateral 24 hours a day and causing rapid depreciation. Queenan, *supra,* at 37. GMAC does not argue that the debtor's use of the automobile in this case is in any way unusual. GMAC calls instead for an across-the-board application of the retail price to value security interests in automobiles in Chapter 13 proceedings. This result is unsupported both by the authorities discussed herein and by the language of the statute.

GMAC also contends there is support for its position in *United Savings Ass'n v. Timbers of Inwood Forest Associates,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). The issue in *Timbers* was whether, in determining the value of an undersecured creditor's collateral for purposes of 11 U.S.C. § 362(d)(1), the creditor was entitled to add on hypothetical interest that it was losing as a result of its inability to foreclose on the property because of the automatic stay. The Court held the creditor was not entitled to add on the interest. The Supreme Court's opinion in *Timbers* looks to section 506 by analogy, but does not suggest that the value of collateral should be determined by replacement cost to the debtor. Rather, *Timbers* measures the value of the creditor's interest as if the collateral were in the hands of the creditor. It concludes that the loss of the right of

immediate foreclosure caused by the debtor's retention of the collateral is not a factor to be considered in valuing the creditor's interest. *See* 484 U.S. at 371–72, 108 S.Ct. at 630. Thus, *Timbers* suggests that the value of collateral is to be determined by looking to the foreclosure value. *Cf. In re Balbus*, 933 F.2d 246, 250–52 (4th Cir. 1991) (where purpose of valuation was to determine whether debtor had too much unsecured credit to qualify as Chapter 13 debtor, and where debtor would retain and use his house, the value of creditor's secured interest in the house was set at amount creditor would receive at foreclosure sale). To the extent that *Timbers* has any relevance to this case, we conclude it supports the BAP's decision to use the wholesale valuation, representing the value the automobile would have in the hands of the creditor, rather than a value based on the replacement cost to the debtor.

### THE SERVICE CONTRACT

██ We also agree with the BAP that the mechanical service contract value should not be included in GMAC's allowed secured claim. As the BAP pointed out, GMAC's claim is secured by an interest in both the automobile and the service contract premiums. The contract language does not grant GMAC a security interest in the service contract itself. The BAP therefore correctly held that if, on remand, GMAC can show any entitlement to a refund of premiums after repossession, such sum would be included in the valuation of the collateral, but that GMAC was not entitled to have the value of the contract itself included in the valuation of the collateral.

AFFIRMED.

NOONAN, Circuit Judge, dissenting:

The Bankruptcy Code provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a).

In the present case the "property" of the estate of the debtors is the 1987 Cadillac. The "interest of the estate" is the ownership and possession of the automobile. The "interest of the creditor," GMAC, is "a security interest", conferred by the conditional sales contract. The crux of the case is the value of this interest.

To an uninformed layman, "value" and "valuation" appear simple and unambiguous terms. The statute itself dispels such a misconception. The value of the creditor's interest depends upon its valuation, and, according to the second sentence of § 506(a), that valuation is to be done variously, in light of two factors, the purpose of the valuation and the use or disposition to be made of the interest.

The key fact is that the debtor is going to use the car. The wholesale price testified to by the Mitchells' expert is irrelevant. The debtor is not going to wholesale the Cadillac. There is no better way of arriving at its value "in the light of ... its proposed use" than to determine the cost of providing a similar car. That figure is the high Blue Book figure. The statutory provision controls.

That the car is being used, at least in part, for George Mitchell's business is an equitable reason weighing in favor of this result. The use of the car generates income that will be of benefit to all the creditors. But even if the car were being used only for pleasure, its valuation, in accordance with the terms of the statute, would depend on its use and so require a valuation different from the wholesale price.

The difference, it is urged, is not great between the retail and the wholesale price. Why not restrict the creditor to what it could get by foreclosure if there were no bankruptcy? The answer is that we are not free to disregard the statute that controls what happens under the statutory scheme set up by bankruptcy. Bankruptcy does equity only within the confines of the controlling law. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169 (1988). No windfall is given the creditor. GMAC's total claim is $27,062.25. GMAC is still undersecured when the high Kelley Blue Book figure is the measure of value.

*United Savings Ass'n v. Timbers of Inwood Forest Associates*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) supports, if it does not control, this result. There, the creditor sought interest on its collateral because the automatic stay prevented foreclosure. The Supreme Court unanimously held that the creditor could not get compensation for the debtor's use of the collateral. The issue before the Court was not the valuation of the collateral for the purpose of determining what amount of the claim was secured but what terms would protect the creditor's security interest. In a dictum relevant to our case, the Court noted that the creditor's interest under § 506(a) was its security interest considered apart from the right to foreclose. Analogously in our case the right to foreclose does not control the value. What is controlling is the value of the security interest as it is used.

I respectfully dissent.