**In re FERGUSON, Gary J. and Ferguson, Lori A., Debtors.**

**Bankruptcy No. 92–02644.**

United States Bankruptcy Court, D. Idaho.

Jan. 6, 1993.

Michael B. McFarland, Coeur d'Alene, ID, for debtors.

William M. Appleton, Coeur d'Alene, ID, for Ponderosa Enterprises.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON VALUATION

ALFRED C. HAGAN, Chief Judge.

Ponderosa Enterprises, Inc. ("Ponderosa") objects to confirmation of the debtors' Chapter 13 plan. Gary and Lori Ferguson ("debtors") valued their 1988 Subaru GL–10 station wagon at $3,500.00 for the purposes of their Chapter 13 plan. Ponderosa, the assignee of the security interest in the vehicle, contends this value is too low.

Section 1325(a)(5)(B)(ii) requires that a Chapter 13 plan provide for a creditor to receive value at least equal to the amount of the creditor's allowed secured claim.[1] The amount of an allowed secured claim is determined under 11 U.S.C. § 506. In the Ninth Circuit, automobiles in Chapter 13 plans are generally valued at wholesale rather than retail value. *General Motors Acceptance Corp. v. Mitchell (In re Mitchell)*, 954 F.2d 557, 560 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992); *In re Goldner*, 142 B.R. 926, 927 (Bankr.D.Idaho 1992).

This does not reduce to a simple question in the present case. One of the primary items of contention regards the vehicle's condition as a result of an auto accident.

---

1. Section 1325 reads in part:
   (a) Except as provided in subsection (b), the court shall confirm a plan if—
   \* \* \* \* \* \*
   (5) with respect to each allowed secured claim provided for by the plan—
   \* \* \* \* \* \*
   (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

   (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; ....
   11 U.S.C. § 1325(a)(5)(B).

Lori Ferguson testified the vehicle had been in a collision requiring $5,700 worth of repairs. The frame is still bent after repair, she testified, and the car pulls to the right. Mark Loy, a witness for Ponderosa, testified he examined and test-drove the vehicle, that he had not been able to determine the vehicle had been in an accident, and that the vehicle did not sway to the left or right.

Numerous possible figures were presented by both sides in support of their contentions. The parties submitted differing "Blue Book" valuations. Ponderosa submitted a copy of the September/October 1992 Kelly Blue Book. It shows a base wholesale value of $5,500, with an addition of $1,075 for equipment and a deduction of $1,000 for high mileage, for a total of $5,575. Loy also testified that at an auction, at this time of year and with knowledge of the auto's involvement in an accident, he would offer $5,000.00.

Debtors present the December 1992 NADA book value. This shows a base wholesale value of $4,050, with an addition of $300 for a turbo engine and $325 for a GL–10 package, and deductions of $525 for high mileage and an unspecified amount for reconditioning. Loy testified that detailing of the vehicle, which involves cleaning, would cost approximately $75. Assuming this is the cost of reconditioning, the total wholesale value suggested by debtors is $4,075. Debtors argue an additional amount should be deducted because of the bent frame. Based on Loy's testimony that repair of a bent frame could cost between $200 and $2,000, debtors ask the amount be estimated between those two extremes at $1,100.

I cannot accept the debtors' requested deduction for repairs to the frame. Leaving aside for the moment the issue of whether the cost of repair is an accurate measure of the decreased value of the collateral, there is no evidence to support a deduction of $1,100 for necessary repairs to the frame. On being asked what the average cost of repair of a bent frame would be, Loy stated that he "wouldn't have a clue." There is no evidence as to the extent of any damage to the frame, and no evidence as to the cost required for such repair.

There remains the problem in determining which of the two book values is proper. The legislative history of section 506(a) indicates that " 'courts will have to determine value on a case-by-case basis.' " *Mitchell, supra,* 954 F.2d at 559 (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5854). Here, the subject of valuation is a particular vehicle that may or may not still have damage as a result of an auto accident. Loy's testimony he would pay $5,000 at auction for this vehicle, knowing it had suffered damage to its frame as a result of an accident, is the best evidence as to value. A valuation of $5,000 is reasonable given the $5,575 Kelly book value and the $4,075 NADA book value, and additionally takes into account the possible frame damage.

It is therefore determined the proper value of the vehicle is $5,000.00. A separate order will be entered denying confirmation and allowing debtors time to amend their plan to confirm to the allowed amount of the Ponderosa claims.