**In re Charles F. ROWLAND, Debtor.**

**In re Joseph A. EDWARDS and Carrie Lee Edwards, Debtors.**

**Bankruptcy Nos. 93–07444, 93–07461.**

United States Bankruptcy Court,
N.D. Florida,
Tallahassee Division.

March 17, 1994.

Frank Rainer, Tallahassee, FL, for Barnett.

Nathan Bond, Tallahassee, FL, for debtors.

Leigh Hart, Tallahassee, FL, Trustee.

Michael Reisman, Tampa, FL, for Ford Consumer.

### MEMORANDUM OPINION ON VALUATION OF COLLATERAL

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

The above-styled cases came on for hearings before the Court on February 10, 1994, on creditors' motions to value collateral. The Court has elected to consolidate discussion of the cases due to the virtually identical fact patterns and arguments involved in both cases.

Debtor Charles F. Rowland and Debtors Joseph and Carrie Edwards filed petitions for relief under Chapter 13 of the Bankruptcy Code. Creditors of the debtors in each case have claims secured by liens on the debtors' mobile homes. The debtors' Chapter 13 plans propose retention of the mobile homes and payment to the secured creditors of the value of the homes. The disputes arise with respect to valuation of the homes for purposes of bifurcating the creditors' secured and unsecured claims under Section 506(a) of the Bankruptcy Code. Having considered the contentions of the parties, I believe that guidelines for valuation are appropriate. After reviewing the arguments of counsel, pleadings and memoranda on file, I make the following findings of fact and conclusions of law:

### I. STATEMENT OF THE FACTS

#### A. *In re Charles F. Rowland:*

The Debtor Rowland and Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt"), entered into a retail installment contract and security agreement in November of 1990. The loan is secured by a lien on a 1991 Fleetwood mobile home in which the Debtor resides. The Debtor filed a petition for relief under Chapter 13 on October 18, 1993. Vanderbilt filed a proof of claim for $15,243.72. In his schedules the Debtor valued Vanderbilt's secured claim at $9,064.26, which is the N.A.D.A. wholesale value for the mobile home for September–November 1993. The N.A.D.A. retail/resale value is $13,329.80.

Due to the discrepancy in the valuations, Vanderbilt filed a Motion to Value Collateral on November 22, 1993. Both parties then submitted expert appraisals. The Debtor's expert assigned a wholesale value of $7,000–$8,000 to the mobile home, and Vanderbilt's expert assigned a retail value of $14,000. The Debtor's Chapter 13 plan proposes retention of the mobile home and payment of the present value of the collateral in monthly installments to Vanderbilt.

#### B. *In re Joseph A. Edwards and Carrie Lee Edwards:*

Debtors Joseph A. Edwards and Carrie Lee Edwards entered into a retail installment contract and security agreement with Ford Consumer Finance Company, Inc. ("Ford") in August of 1992. Ford holds a perfected security interest in the Debtors' 1993 Fleetwood Spring Hill mobile home. On November 1, 1993, the Debtors filed their Chapter 13 petition. In their schedules the Debtors listed Ford's secured claim at $14,929.34, based on the N.A.D.A. wholesale value for September–December 1993. In its Motion to Value Collateral, Ford contested the Debtor's valuation at wholesale and contended that the fair market value of the mobile home was $25,223.30, based on N.A.D.A. retail value. Ford then filed an appraisal by an expert, who assigned a value of $26,000 to the mobile home. The Debtors filed an expert appraisal of $18,000 wholesale value. The Debtors' plan proposes to retain

the mobile home and make monthly payments to Ford with present value equalling the wholesale value of the collateral.

## C. *Common Arguments:*

The debtors argue that, for purposes of their Chapter 13 plans, the proper standard for valuation of their mobile homes is wholesale value. They assert that the overwhelming weight of authority supports this view. They also contend that valuation should be determined by the "creditor's interest" in the property. This interest is to repossess and sell the collateral; therefore, the "creditor's interest" should be the amount it would receive upon reasonable disposition of the collateral.

Further, the debtors argue that to reach a correct wholesale value for mobile homes in a Chapter 13 case, the N.A.D.A. "moved to resale" wholesale value is the closest approximation. Under the "moved to resale" valuation method, a wholesale price is reached by applying a factor to the retail value of the mobile home. This factor takes into account dealer commissions, profit, and expenses of moving the mobile home to the sales lot, then moving it again to the retail purchaser's lot. The debtors assert that a double move is the usual method of repossession and resale; therefore, the "moved to resale" wholesale method is the most appropriate valuation method for mobile homes under Section 506(a) of the Bankruptcy Code.

The creditors, Vanderbilt and Ford, have taken the position that retail amount is the appropriate value. They acknowledge that the majority of courts have adopted the view that wholesale value, or a variation thereof, is the appropriate value; however, they claim that the majority's embrace of the wholesale amount does not take into consideration the entire language of Section 506(a). They argue that according to Section 506(a) the "creditor's interest in the estate's interest" is to be valued and that the "estate's interest" is equivalent to the retail value of the mobile home (cost to replace the collateral). They further argue that the statute dictates valuation in light of the proposed disposition or use of the collateral; therefore, where the debtor intends to retain and use the collateral, retail value (cost to replace the mobile

home) is fitting because repossession and resale are not contemplated.

The issue before the Court is the proper method of valuing a mobile home under Section 506(a), Bankruptcy Code, for the purpose of allowing an undersecured creditor's secured claim, where the Chapter 13 debtor proposes to retain and use the mobile home.

## II. *DISCUSSION*

11 U.S.C. Section 506(a) provides, in part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Until now, neither the Eleventh Circuit nor this Court have spoken to the proper method to apply when valuing a mobile home pursuant to Section 506(a), Bankruptcy Code. Looking to the statutory language, the Code does not prescribe a clear-cut standard by which to value collateral.

Legislative history provides that "[v]alue does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going-concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case." H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977). Legislative history also indicates that valuation should not be based on a hard and fast rule. Any suggestion by the parties that the Court should apply an inflexible standard, whether it be wholesale or retail amount, must be rejected.

The debtors rely heavily on *In re Mitchell*, 954 F.2d 557 (9th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992),

wherein the Ninth Circuit held that wholesale value should generally apply in Chapter 13 cases. *Mitchell* involved the valuation of an automobile for the purpose of determining the amount of a secured creditor's allowed secured claim in a Chapter 13 plan. The creditor argued that Section 506(a) requires determination of value "in light of the proposed disposition or use of such property", thus, the value of its secured interest should equal replacement cost to the debtor where the debtor intends to retain and use the vehicle. The Ninth Circuit rejected the creditor's argument because it ignores the clause of Section 506(a) which defines the value of the secured claim as the value of the "creditor's interest" in the property. *Mitchell*, 954 F.2d at 560. The Ninth Circuit's reasoning is that the "creditor's interest" in the collateral is equivalent to the amount the creditor would receive upon repossession and sale of the collateral (i.e. wholesale amount).

I decline to follow *Mitchell* because it completely ignores the second sentence of Section 506(a), which requires valuation "in light of the purpose of the valuation and of the proposed disposition or use of such property." The Ninth Circuit's general rule would lead parties to conclude that, regardless of the proposed disposition or use of the collateral, a creditor's lien will always be valued at the amount that the creditor would receive upon repossession and sale.

The *Mitchell* court attempted to rectify its disregard of the "disposition and use" language by acknowledging that there are circumstances in which the proposed disposition of collateral would affect the creditor's interest. However, the court stated that these circumstances are limited and arise only when the collateral is used as part of a going concern or when the debtor's use of the collateral is "particularly beneficial" or "particularly detrimental" to the value of the collateral. *Id.* I believe that these qualifications do not give sufficient deference to the statutory requirement that the disposition and use of the collateral should be factored into the valuation procedure.

Moreover, *Mitchell* sets forth an inflexible standard which is inconsistent with the legislative intent of determining value on a case-by-case basis, taking into account the particular facts of the case and evaluating the competing interests of the debtor and creditor. The Ninth Circuit's general rule does not allow for the effectuation of these legislative goals.

The creditors in the instant cases argue that retail price of the mobile home is the best approximation for purposes of valuing the creditor's allowed secured claim. They assert that Section 506(a) directs that the amount of a creditor's secured claim be equal to the value of the creditor's interest in the debtor's interest in the collateral and that such value be determined in light of the proposed disposition of the property. As such, the creditors urge that the replacement cost of the mobile home to the debtor, that is, its retail value, is the appropriate measure because the debtor's proposed disposition is to retain and live in the home.

The creditors' argument is grounded on the line of cases in which courts have held that an undersecured creditor's lien interest in collateral should be valued at retail price. *See In re Green*, 151 B.R. 501 (Bankr. D.Minn.1993); *In re Johnson*, 145 B.R. 108 (Bankr.S.D.Ga.1992); and *In re Reynolds*, 17 B.R. 489 (Bankr.N.D.Ga.1981). These courts focus on the second sentence of Section 506(a) which provides that value should be determined "in light of the purpose of the valuation and of the proposed disposition or use of such property." These courts further reason that (1) where the debtor proposes to retain and use the collateral and (2) the purpose of the valuation is to fix the amount an undersecured creditor will be paid under the plan, the value of the collateral should equal the retail price, or replacement cost. They reason that costs of a hypothetical repossession and sale of the collateral should not be deducted from the value of the creditor's lien because no such action is contemplated.

I do not believe that replacement cost of the mobile home to the debtors, based upon a dealer's retail price, is the appropriate standard. The debtors plan to keep the mobile homes in which they are currently residing and do not plan to replace them. Retail price, or replacement cost, is calculated by

adding several costs to wholesale price (which is the amount the creditor would receive upon selling the mobile home to a wholesale dealer.) The dealer incurs several costs in preparing the mobile home for sale to a consumer, including expenditures for advertising, repair, sales commissions, and other costs of doing retail business. *See In re Miller*, 4 B.R. 392 (Bankr.S.D.Cal.1980). Profit to the dealer is also factored in. It is not proper to value a creditor's lien interest at retail price, where the creditor is not a dealer in this type of property, because the creditor does not incur any retail-related expenses, nor is it in the business of selling for a profit.

A growing number of cases have held that valuation of collateral at an average between wholesale and retail prices is the best alternative because it is the most consistent with the statutory language and legislative intent. *See In re Jones*, 5 B.R. 736 (Bankr.E.D.Va. 1980) (valuation is neither amount realized at a distress sale nor on-the-lot, in-the-store retail figure); *In re Miller*, 4 B.R. 392 (Bankr.S.D.Cal.1980) (median value between wholesale and retail); *In re Thayer*, 98 B.R. 748 (Bankr.W.D.Va.1989) (fair and equitable to value collateral at median value between average retail and average trade-in); *In re Stauffer*, 141 B.R. 612 (Bankr.N.D.Ohio 1992) (most equitable approach would be to average N.A.D.A. retail and wholesale values); and *In re Carlan*, 157 B.R. 324 (Bankr. S.D.Tex.1993) (proper value between wholesale and retail).

I agree with these courts and hold that the proper and most equitable approach is to value the collateral usually at an average between the wholesale and retail amounts. An analysis of the benefits and risks of the competing interests indicates that this approach will yield the most equitable result. Valuation at wholesale price does not take into consideration the creditor's risk that the debtor will sell the collateral at a higher-than-wholesale amount in an arm's length transaction and pocket the difference after stripping down the lien. On the other hand, valuation at retail amount does not consider the harm to the debtor when the creditor is allowed to receive an amount that the debtor would have to pay a retail dealer to replace the collateral when no such replacement is contemplated. The averaging approach takes into account these competing interests and does not create a windfall for either party. *See In re Carlan*, 157 B.R. at 326.

Further, the retail and wholesale figures suggested by the parties are based on N.A.D.A. book values which do not take into account an alternative market available to the debtor. The debtor, after confirmation of the plan, may decide to sell the collateral in an open market to a private party. The averaging method more closely reflects the amount which the debtor may receive upon sale of the collateral to a private party. *In re Miller*, 4 B.R. at 394. This potential private transaction avoids many of the costs factored into retail pricing.

Notwithstanding the foregoing, it is, of course, preferable for the parties to negotiate and determine a suitable value for the collateral so that such disputes do not arise and require judicial determination. These types of disputes unnecessarily prolong the bankruptcy process and hinder expeditious effectuation of the debtor's plan of rehabilitation. This endorsement of negotiation between the parties, however, does not suggest that the Court will not, if necessary, hold evidentiary hearings to determine the value of the collateral.

### CONCLUSION

In a Chapter 13 case, where the debtor intends to retain and use a mobile home securing an undersecured creditor's lien interest, the starting point for valuation of the allowed secured claim under Section 506(a) should be the average between the N.A.D.A. retail and wholesale values. Then, if there are special circumstances dictating upward or downward adjustments, the value may be adjusted accordingly.

In the cases before the Court, the evidence presented does not require any adjustments to the average. Accordingly, in the case of Charles Rowland, the value of Vanderbilt's allowed secured claim shall be $11,196. In the case of Joseph and Carrie Edwards, the allowed secured claim of Ford shall be $20,076.

Separate orders in accordance herewith shall be entered in the respective cases.