**In re Ethel Y. MADDOX, Debtor.**

**In re Alice M. ELLIS, Debtor.**

**In re Andrea BARRETT, Debtor.**

**Civil Action Nos. 96–3024, 96–3148 and 96–3149.**

United States District Court, D. New Jersey.

Sept. 19, 1996.

Andrew Vazquez–Schroedinger, David Paul Daniels, P.C., Camden, NJ, for Debtor–Appellee Ethel Maddox.

Seymour Wasserstrum, Vineland, NJ, for Debtor–Appellees Andrea Barrett and Alice Ellis.

David R. Lyons, Hillary Veldhuis, Lyons & Doughty, P.C., Voorhees, NJ, for Appellant Chrysler Financial Corporation, successor by merger to Chrysler Credit Corporation.

OPINION

ORLOFSKY, District Judge:

In these consolidated appeals, Chrysler Financial Corporation, successor by merger to Chrysler Credit Corporation ("Chrysler"), appeals from three orders of Bankruptcy Judge Judith H. Wizmur of the United States Bankruptcy Court for the District of New Jersey, *In re Ethel Maddox,* Bankruptcy No. 95–16118, *In re Alice M. Ellis,* Bankruptcy No. 95–16387, and *In re Andrea Barrett,* Bankruptcy No. 95–16834. The Orders appealed from, which were filed by Judge Wizmur on May 24, 1996, ("the May 24, 1996 orders") overruled Chrysler's objections to each of the the Debtor's Chapter 13 plans.

The issue presented in these consolidated appeals, one of first impression in this Circuit, concerns the appropriate standard by which to measure the value of the allowed secured claim of a creditor holding a security interest in a motor vehicle owned by a debtor in a Chapter 13 proceeding, where the vehicle is to be retained and used by the debtor during the term of the Chapter 13 plan, and the debtor seeks confirmation of the plan under the "cram-down" provisions of 11 U.S.C. § 1325(a)(5)(B)(i) and (ii).[1] In all three of the consolidated appeals before this Court, Judge Wizmur held that the wholesale value of the motor vehicle was the appropriate measure of valuation. *See In re Maddox,* 194 B.R. 762, 770 (Bankr.D.N.J.1996). Chrysler appeals from those portions of Judge Wizmur's May 24, 1996, orders granting the Debtors' motions to reduce the amount of Chrysler's Secured Proof of Claim to the wholesale value of the vehicles. For the reasons that follow, I conclude that the "value" of the secured creditor's "allowed claim" within the meaning of 11 U.S.C. § 506(a)[2] is the wholesale value of each vehicle. Accordingly, I therefore affirm Judge Wizmur's May 24, 1996, orders.

## I. Facts and Procedural History

The undisputed facts relating to each of the three appeals presently before this Court are virtually identical. Debtors, Ethel Y. Maddox ("Maddox"), Andrea Barrett ("Barrett"), and Alice M. Ellis ("Ellis"), filed voluntary petitions for relief under Chapter 13 of the United States Bankruptcy Code. *See* 11 U.S.C. §§ 1301 *et seq.* Chrysler is the assignee of the retail installment sale contracts which evidence each Debtor's purchase of her motor vehicle. Pursuant to the installment sales contracts, Chrysler holds a perfected, first priority security interest in each Debtor's subject vehicle.

Shortly after a debtor files a Bankruptcy Petition in a Chapter 13 case, the debtor generally must propose a plan for the repayment of debts. Fed.R.Bank.P. 2002(b). Where the value of the collateral held by a debtor is less than the amount owed to the secured creditor, Chapter 13 of the Bankruptcy Code permits the debtor to reduce a creditor's secured claim down to the value of the collateral. *See* 11 U.S.C. § 1325(a)(5).

Accordingly, the Debtors' proposed plans of reorganization in these cases all treated Chrysler's claim as a secured claim in the amount of the wholesale value of their respective vehicles, as published by the Eastern Edition of the National Auto Dealer's Association Used Car Guide ("NADA Guide").

---

1. 11 U.S.C. § 1325(a)(5)(B) provides in relevant part that the court shall confirm a plan if, with respect to each allowed secured claim provided for by the plan,

 (i) the plan provides that the holder of such claim retain the lien securing such claim; and
 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the amount of such claim.

2. In relevant part, 11 U.S.C. § 506(a) provides: An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent that the amount subject to setoff, as the case, may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

In all three cases, however, Chrysler objected to the valuation method used by each Debtor and submitted a Secured Proof of Claim which valued its claims at the retail value, and not the wholesale value, of each Debtor's vehicle, as published in the NADA Guide. In each case, Chrysler filed an Objection to Confirmation, requesting, *inter alia,* that the Debtor's plan be modified to conform to Chrysler's Secured Proof of Claim.

By Orders dated, May 24, 1996, Judge Wizmur overruled Chrysler's objections in each case, to the extent that such objections sought the recovery of the retail value of each Debtor's vehicle. Instead, Judge Wizmur held that each Debtor's plan shall provide for payment to Chrysler of the wholesale value of the Debtor's respective vehicles.

Specifically, Judge Wizmur found that because the purpose of the valuation of the creditor's interest in the debtor's interest in the collateral "is to place the creditor in approximately the same position it would have occupied had it been able to exercise its right to repossess the collateral absent the bankruptcy filing ... the wholesale value will control as the appropriate measurement for vehicle valuation." *In re Maddox,* 194 B.R. at 770.

Chrysler now appeals from those portions of Judge Wizmur's May 24, 1996, Orders, relating to the valuation of each Debtor's vehicle for the purpose of determining Chrysler's allowed secured claim. Because the legal issues presented in each of Chrysler's three appeals are identical, an Order consolidating Chrysler's three pending appeals was entered by this Court on July 12, 1996.

## II. Standard of Review

■ Judge Wizmur's May 24, 1996, Orders, relating to the confirmation of each Debtor's Chapter 13 plan and the valuation of each Debtor's vehicle for the purpose of determining Chrysler's allowed secured claim, are final orders of the United States Bankruptcy Court. *See In re Brown,* 803 F.2d 120, 121–122 (3d Cir.1986). Accordingly, 28 U.S.C. § 158(a) vests this Court with jurisdiction to hear Chrysler's appeal from Judge Wizmur's Orders.[3]

■ Findings of fact by a bankruptcy judge are reviewable by a district court only for clear error. *See Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 84 (3d Cir.1988). In contrast, a bankruptcy judge's conclusions of law are subject to plenary or *de novo* review by this Court. *Id.*

■ The issue raised in Chrysler's appeal concerns the appropriate standard by which to measure the allowed secured claim of a creditor holding a security interest in a motor vehicle in a Chapter 13 proceeding within the meaning of 11 U.S.C. § 1325(a)(5)(B) and 11 U.S.C. § 506. Because the issue on appeal relates to Judge Wizmur's interpretation of law, rather than her findings of fact, this Court must exercise *de novo* review of her decision, and thus make an independent determination of the legal issue raised on appeal.

## III. Discussion

### A. *Basic Statutory Framework*

■ After filing for Bankruptcy under Chapter 13 of the Bankruptcy Code, a debtor must propose a plan for the repayment of debts. Section 1325 of the Bankruptcy Code sets forth the requirements that must be satisfied in order for a court to confirm a debtor's Chapter 13 plan. *See* 11 U.S.C. § 1325(a)[4].

> (A) the holder of such claim has accepted the plan;
> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (C) the debtor surrenders the property securing such claim to such holder.

---

3. 28 U.S.C. § 158(a) states in pertinent part that "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees ... of bankruptcy judges."

4. 11 U.S.C. § 1325(a)(5) provides in relevant part that the court shall confirm a plan if, with respect to each allowed secured claim provided for by the plan,

A debtor seeking confirmation of a Chapter 13 plan essentially has three choices regarding the treatment of each allowed secured claim in the plan. First, if the creditor holding the allowed secured claim accepts whatever treatment of its secured claim the debtor proposes in the plan, the debtor need not do anything further. *See* 11 U.S.C. § 1325(a)(5)(A).

However, if the creditor does not accept the debtor's plan, a debtor has two alternatives. The debtor may surrender the property securing the allowed secured claim to the creditor holding such a claim. *See* 11 U.S.C. § 1325(a)(5)(C). If, instead, the debtor does not wish to surrender the property securing the allowed secured claim, the debtor may invoke the so-called "cram-down" power of 11 U.S.C. § 1325(a)(5)(B).

Section 1325(a)(5)(B) provides that, in the absence of a creditor's consent to the plan, a debtor who wishes to retain property securing an allowed secured claim, must provide in its plan that the holder of the allowed secured claim retain the lien securing such claim and receive the present value of its allowed secured claim. *See* 11 U.S.C. § 1325(a)(5)(B)(i) and (ii). At issue in these consolidated appeals before this Court is the proper method of calculating the value of a creditor's allowed secured claim when a debtor opts to seek confirmation of a Chapter 13 plan under the "cram-down" provisions contained in Section 1325(a)(5)(B)(i) and (ii).

The method of calculating the value of an allowed secured claim is set forth in Section 506(a) of the Bankruptcy Code. In relevant part, Section 506(a) provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim *to the extent of the value of such creditor's interest in the estate's interest in such property,* or to the extent that the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. *Such value shall be determined in light of the purpose of the valuation and of the proposed dispo-sition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.*

11 U.S.C. § 506(a) (emphasis supplied).

In the consolidated appeals before this Court, each Debtor's respective vehicle is the property which secures each of Chrysler's allowed secured claims. The question posed in these appeals, however, is whether Section 506(a) requires the utilization of the *whole-sale* value or the *retail* value of each debtor's vehicle when determining the value of the creditor's allowed secured claim for purposes of the "cram-down" provisions set forth in Section 1325(a)(5)(B).

### B. *Valuation Under Section 506(a)*

Whether the proper measure of the value of a Debtor's vehicle which serves as collateral for a creditor's allowed secured claim is the retail value or the wholesale value of the vehicle when the Debtor seeks to exercise the "cram-down" option under Section 1325(a)(5)(B) is an issue of first impression in this Circuit, as well as in this District. The federal appellate courts which have squarely addressed this issue are divided. *Compare In re Rash,* 90 F.3d 1036 (5th Cir.1996) (in banc); and *In re Mitchell,* 954 F.2d 557 (9th Cir.), *cert. denied,* 506 U.S. 908, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992) (valuing debtor's vehicle at its wholesale value) (same); *with In re Trimble,* 50 F.3d 530 (8th Cir.1995) (valuing debtor's vehicle at its retail value); and *In re Winthrop Old Farm Nurseries, Inc.,* 50 F.3d 72 (1st Cir.1995) (valuing debtor's real property at its resale, not foreclosure value).

The legislative history of Section 506 provides little guidance in the resolution of this issue, stating only that, "[w]hile courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property." S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5854.

Moreover, as noted by Judge Wizmur, any interpretation of Section 506(a) must give effect to each provision of the statute and must avoid rendering any part of the statute inoperative. *In re Maddox,* 194 B.R. at 767. *See also In re Madison,* 186 B.R. 182, 184 (Bankr.E.D.Pa.1995) (citing *United States v. Nordic Village, Inc.,* 503 U.S. 30, 34–36, 112 S.Ct. 1011, 1014–16, 117 L.Ed.2d 181 (1992)). Therefore, according to the language of Section 506(a), itself, all three factors—the extent of the value of such creditor's interest in the estate's interest in such property, the purpose of the valuation, and the proposed disposition or use of such property—must all be examined by a court in determining the value of collateral for purposes of a Section 1325(a)(5)(B) "cram-down."

### (1) Value of the Creditor's Interest in the Estate's Interest in the Property

The first sentence of Section 506(a) states that an allowed claim is a secured claim to the extent of "the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a). An interpretation of this sentence necessitates a two-step analysis. First, a court must determine the "estate's interest in such property," before it can then ascertain the "value of such creditor's interest in the estate's interest." *See id.*

The estate's interest in the property requires an examination of "the estate's share in the property *vis-a-vis* others," as well as "the nature of the property interest held by the estate." *Rash,* 90 F.3d at 1043. In other words, where the "interest of the estate in the subject property [is] of a nature other than an ownership interest," or where the estate has only a part ownership interest in the subject property, the creditor's interest can be no greater than the interest of the estate. *Id. See also* 3 *Collier on Bankruptcy* ¶ 506.04, at 506–17 (15th ed. 1996) ("*Collier*"). In the appeals before this Court, there is no evidence that the estates of any of the three Debtors have anything less than complete, undivided ownership interests in the respective vehicles which serve as collateral.

After determining the nature of the estate's interest, Section 506(a) next requires the determination of the value of the creditor's interest in the estate's interest in the subject property. *See* 11 U.S.C. § 506(a). A creditor's interest in an estate's property may be less than an estate's interest where there are liens against the subject property which are senior to that of the creditor's lien. *Collier* at 506–18.

In *Rash,* the Fifth Circuit explained that, since the nature of a secured creditor's interest is, by definition, that of a security interest, the value of that creditor's interest in the estate's interest necessarily means "what the creditor could realize if it sold the estate's interest in the property according to the security agreement, taking into account the rights of other creditors with liens secured by the estate's interest." *Rash,* 90 F.3d at 1044. *See also Mitchell,* 954 F.2d at 560 (value of creditor's interest in estate's interest is "what the creditor would obtain if the creditor were to make a reasonable disposition of the collateral"). Therefore, both the Fifth and Ninth Circuits have interpreted this provision to represent what the creditor could realize upon a commercially reasonable disposition of the debtor's automobile—or its wholesale value. *Rash,* 90 F.3d at 1044; *Mitchell,* 954 F.2d at 560.

Interestingly, the Court of Appeals for the Fifth Circuit noted that, while the language of Section 506(a) requires a determination of the "*value* of the creditor's interest," it merely requires a determination of "the estate's interest," and not specifically its value. *Rash,* 90 F.3d at 1044 (emphasis supplied). The *Rash* Court concluded that if the drafters of Section 506(a) had intended "[o]therwise, the first sentence [of Section 506(a)] would read 'the value of such creditor's interest in *the value of* the estate's interest in such property.'" *Id.* at 1044 (citing 11 U.S.C. § 506(a) (emphasis supplied)).

Chrysler contends, however, that such a reading of this sentence is unduly restrictive. It argues that the value of the estate's interest—the value that the debtor places on its ability to retain and use the collateral, or the retail value of the vehicle,—must necessarily be considered when interpreting the phrase,

"the extent of the value of such creditor's interest in the estate's interest in such property." *See* 11 U.S.C. § 506(a). Chrysler adds, that, therefore, "[t]he creditor's allowed secured claim must at least be equal to the value that the debtor places on his ability to retain and use the vehicle." (Chrysler's Brief in support of its Notice of Appeal ("Chrysler's Brief") at 18).

I find Chrysler's assertion to be unsupported by the plain language of Section 506, by the case law interpreting it, and by logic. Those Courts which have ultimately held that the debtor's collateral should be valued at its retail value, or its replacement value to the debtor, have chosen to minimize the importance of the first sentence of Section 506(a) when making such a determination. *See, e.g., In re Trimble,* 50 F.3d at 531 ("[w]e adopt the reasoning of the ... courts that have focused on the second sentence of section 506(a), and we now conclude that the value of [the] lien interest is properly based on the retail value of the collateral").

■ Accordingly, this Court agrees with Judge Wizmur, as well as the Fifth and Ninth Circuits, in holding that Section 506(a) requires only the valuation of the creditor's interest in the subject property, and joins these Courts in concluding that "[t]he words 'in the estate's interest in the property' only designate the object in which the creditor has an interest." *See Rash,* 90 F.3d at 1044; *Mitchell,* 954 F.2d at 560.

### (2) Purpose of Valuation

Section 506(a) also instructs that the value of a creditor's interest must be determined in light of the purpose of such valuation. 11 U.S.C. § 506(a). There are many purposes for which a court may wish to value property under Section 506(a). Defining the purpose of a valuation under Section 506(a) is important because "valuation for one purpose will not necessarily control for another." *Rash,* 90 F.3d at 1046.

Chrysler argues that the purpose of the valuation "is to determine the amount which the debtor must pay for the privilege of retaining and using the vehicle notwithstanding the creditor's lien." (Chrysler's Brief at

17–18). To support its contention, Chrysler cites *In re Trimble,* 50 F.3d at 532. In that case, the Court of Appeals for the Eighth Circuit stated that:

> where a debtor intends to retain and use the collateral, the purpose of the valuation is to determine the amount an undersecured creditor will be paid for the debtor's continued possession and use of the collateral, not to determine the amount such creditor would receive if it hypothetically had to repossess and sell the collateral.

*Trimble,* 50 F.3d at 532.

In so holding, the Eighth Circuit specifically stated that it was "adopt[ing] the reasoning of the Fifth Circuit in *In re Rash.*" *Id.* at 531. The Fifth's Circuit's panel decision in *Rash* on which the Eighth Circuit relied, *see* 62 F.3d 685 (5th Cir.1995), however, has been recently been withdrawn by the Fifth Circuit and its holding reversed by the *in banc* decision in *Rash. See Rash,* 90 F.3d at 1038.

In contrast, both the Fifth and Ninth Circuits have found that the purpose of such a valuation is to determine the amount of money a creditor must receive under a debtor's Chapter 13 plan in order to meet the plan confirmation requirements of the "cramdown" option in Section 1325(a)(5)(B). *See Rash,* 90 F.3d at 1046; *Mitchell,* 954 F.2d at 560–61. In *Rash,* the Court thus looked to the provisions of Section 1325(a)(5) "to see whether it interjects any unique considerations that would inform a § 506(a) valuation." *Rash,* 90 F.3d at 1046.

The *Rash* Court noted that, if a secured creditor does not accept a debtor's Chapter 13 plan, Section 1325(a)(5) provides the debtor who seeks plan confirmation with two options. First, under Section 1325(a)(5)(B), the debtor may retain the collateral and provide the secured creditor with the value of that creditor's allowed secured claim. 11 U.S.C. sec. 1325(a)(5)(B). In the alternative, under Section 1325(a)(5)(C), the debtor may surrender the collateral securing the creditor's claim to the secured creditor. 11 U.S.C. sec. 1325(a)(5)(C).

As pointed out by the Court of Appeals for the Fifth Circuit, "[s]tructurally, it appears

that these two alternatives are set forth as equivalent methods of protecting the creditor's security interest where it does not accept the debtor's treatment of that interest under the plan. Accordingly, one would expect that these alternatives would yield the same result." *Rash,* 90 F.3d at 1046.

If the debtor exercises its option under Section 1325(a)(5)(C) and surrenders the collateral to the secured creditor, the creditor will likely receive the wholesale value of the collateral—the value which best approximates that which could be obtained upon a commercially reasonable disposition of the collateral. *See id.; Mitchell,* 954 F.2d at 560 (wholesale value is the value which would best approximate "what the creditor would obtain if the creditor were to make a reasonable disposition of the collateral").

However, if, in the alternative, the debtor exercises its option under Section 1325(a)(5)(B) and chooses to retain the collateral, the secured creditor will be equally protected if it receives an amount from the debtor equal to the wholesale value of the collateral. In other words,

> Section 1325(a)(5)(B) is meant to ensure that a secured creditor will receive the equivalent of recourse to the collateral which was the inducement for extending the loan to the debtor. In other words, section 1325(a)(5)(B) protects the creditor's expectations of recovery against the debtor in the event of default. As long as only the debtor and creditor are involved, these expectations are protected by guaranteeing the creditor the amount he would receive upon repossession and sale or the collateral.

S. Andrew Bowman & William M. Thompson, *Secured Claims Under Section 1325(a)(5)(B): Collateral Valuation, Present Value, and Adequate Protection,* 15 Ind. L.Rev. 569, 577 (1982) (cited in *Rash,* 90 F.3d at 1046–47). Thus, if the debtor must pay the secured creditor the retail value of the collateral in order to retain the collateral under Section 1325(a)(5)(B), the apparent congruence of protection afforded by Sections 1325(a)(5)(B) and (C) would be lost. *See Rash,* 90 F.3d at 1046.

This Court finds the reasoning set forth by the Fifth Circuit's *in banc* decision in *Rash* to be the more persuasive of the two arguments. The rationale of *Rash* also finds support in decisions of this Circuit which address the purpose of valuation in cases discussing related issues pertaining to a debtor's "cram-down" option embodied in Section 1325(a)(5)(B).

For example, in *General Motors Acceptance Corp. v. Jones,* 999 F.2d 63, 68 (3d Cir.1993), the issue before the Third Circuit concerned the interest rate that a secured creditor may charge a debtor who exercises its right to retain collateral under Section 1325(a)(5)(B) and wishes to pay the creditor the value of the creditor's allowed secured claim over time.

The Court held that the proper interest rate in such circumstances is the interest rate that the creditor would charge, at the time of the effective date of the debtor's plan, for a loan of similar character, amount and duration. *Id.* at 70. In so holding, the Third Circuit reasoned that:

> [i]f that creditor receives interest at a rate equal to the rate it charges in the regular course of its business in the region for loans of similar character, amount and duration, that creditor will be placed in approximately the same position it would have occupied had it been able simply to repossess the collateral at the time of the bankruptcy.

*Id.* at 68. The Court in *Jones* thus recognized that the goal of Section 1325(a)(5)(B) is to place the creditor in as good a position as it would have been had the debtor released the collateral to the creditor under 1325(a)(5)(C). *Id.*

As Judge Wizmur correctly pointed out, the only logical extension of the Third Circuit's holding in *Jones* to the facts of these cases is to value the debtor's collateral at the wholesale value—the amount that a creditor would receive upon a commercially reasonable sale of the collateral. *See In re Maddox,* 194 B.R. at 769–70. Only in receiving the wholesale value of the collateral, will a secured creditor, consistent with *Jones,* "be placed in approximately the same position it would have occupied had it been able simply

to repossess the collateral at the time of the bankruptcy." *Id.* at 68.

This interpretation of the purpose of the valuation also finds support in the decisions of the United States Supreme Court. In determining the value of a secured creditor's interest in collateral for purposes of the automatic stay under 11 U.S.C. § 362(d)(1), the Court held that the value of the creditor's interest in the collateral is to be measured by the value it would have to the creditor if it were presently in the hands of the creditor. *See United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 371–72, 108 S.Ct. 626, 630–31, 98 L.Ed.2d 740 (1987). Thus, the Court held that the creditor was not entitled to interest from the debtor representing the amount lost by the creditor's inability to foreclose immediately upon the property. *Id.*

 Accordingly, I agree with Judge Wizmur's conclusion that the purpose of valuation in this case is to determine the amount a creditor must receive under a debtor's plan in order to meet the "cram-down" requirements set forth in Section 1325(a)(5)(B). *See In re Maddox,* 194 B.R. at 768–69.

### (3) Proposed Disposition or Use of the Property

Finally, Section 506(a) provides that the value of the creditor's interest in the estate's interest in the property must be determined "in light of … the proposed disposition or use of such property." 11 U.S.C. § 506(a). Neither the statute, nor its legislative history, however, states whether the "proposed disposition or use" contemplated in this provision is that of the debtor or of the creditor.

Chrysler contends that the language, "the proposed disposition or use," necessarily means that of the debtor, and therefore, since the debtor will be using the collateral, its replacement or retail value is the appropriate measure of value. In support of this contention, Chrysler cites *In re Winthrop,* 50 F.3d at 75, where the Court of Appeals for the First Circuit found that the creditor's interest should be valued "in light of the proposed post-bankruptcy reality: no foreclosure sale and economic benefit for the debtor derived from the collateral equal to or greater than its fair market value." *Id.* at 75.

In contrast, the Debtors argue that merely because they propose to retain and use the collateral does not mean that the value of the collateral is necessarily the Debtor's replacement cost, or the retail cost of the collateral.

The Fifth Circuit squarely addressed the interpretation of this clause most recently in its *in banc* decision in *Rash.* In *Rash,* the Fifth Circuit stated that the " 'proposed disposition or use' language in § 506(a) merely tells us to value the collateral in light of the fact that the debtor has retained possession, [and] says nothing about whether its worth to the debtor or its worth to the creditor is the appropriate measure of its value." *Id.* at 1048. Instead, the *Rash* Court held that the debtor's proposed disposition or use of the collateral is relevant only insofar as it affects the value that a creditor would receive upon repossessing and selling the collateral in a commercially reasonable fashion. In other words,

> [t]he emphasis to be placed upon the concept of "use" or "disposition" of property should not be placed in the context of collateral retention by a debtor via a reorganization plan, but rather ought to focus on a use or disposition of collateral that is either destructive or unanticipated in the sense that would increase the risk of loss to the creditor's interest in the collateral.

*Rash,* 90 F.3d at 1049 (quoting *In re Claeys,* 81 B.R. 985, 992 (Bankr.D.N.D.1987)).

 This interpretation of the "proposed disposition or use" provision, to which Judge Wizmur, as well as the Fifth and Ninth Circuits have adhered, is the only interpretation of this clause which does not conflict with either the plain language of the other portions of Section 506(a), or the decisions of the Third Circuit and the United States Supreme Court which address related valuation issues under the Bankruptcy Code. I agree with Judge Wizmur's conclusion that the "debtor's retention and use of the collateral is relevant only to the extent that such continued use impacts upon the value of the creditor's interest in the collateral." *In re Maddox,* 194 B.R. at 768.

## IV. Conclusion

In sum, I concur with the Fifth Circuit's *in banc* decision in *Rash,* as well as the Ninth Circuit's decision in *Mitchell,* in concluding that the statutory language of Sections 506(a) and 1325(a)(5) require that "a valuation of a secured creditor's interest under § 506(a) should start with what the creditor could realize if it repossessed and sold the collateral pursuant to its security agreement, taking into account the purpose of the valuation and the proposed disposition or use of the collateral." *Rash,* 90 F.3d at 1060. The bankruptcy court may, however, "make adjustments to this amount depending upon considerations arising from the facts of the particular case." *Id.*

Accordingly, the Court will affirm Judge Wizmur's holding that the wholesale value is the appropriate measure for valuing a creditor's secured claim for purposes of the "cram-down" provision contained in Section 1325(a)(5)(B). However, I will remand these cases to the bankruptcy court for further proceedings. On remand, the bankruptcy court will make adjustments to this amount depending upon considerations arising from the specific facts of each Debtor's case, such as whether the debtor's use of the collateral is particularly beneficial or detrimental to the value of the vehicle, or whether the creditor in each case would achieve a greater return than the wholesale value of the collateral upon the creditor's repossession and sale of the collateral. *See Rash,* 90 F.3d at 1060; *In re Maddox,* 194 B.R. at 770. This Court will enter an appropriate order.