**In re Donald Allen TRIMBLE, Debtor.**

**Metrobank, Creditor/Appellant,**

v.

**Donald Allen TRIMBLE, Debtor/Appellee.**

No. 94–1472.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1994.

Decided March 14, 1995.

Marcus Hubert, East Moline, IL, argued, for appellant.

James C. Wherry, Davenport, IA, argued, for appellee.

Before FAGG, Circuit Judge, ROSS, Senior Circuit Judge, and MAGILL, Circuit Judge.

ROSS, Senior Circuit Judge.

Appellant/creditor Metrobank appeals from the district court decision that, pursuant to 11 U.S.C. § 506(a) of the Bankruptcy Code, the value of the bank's secured interest in an encumbered vehicle that the appellee/debtor intends to retain under his chapter 13 reorganization plan is limited to the wholesale value of the vehicle. We reverse.

### I.

Appellee/debtor Donald Allen Trimble secured financing through appellant/creditor Metrobank, for the purchase of a 1988 Ford Ranger pickup. Subsequently, the debtor filed for relief under chapter 13 of the Bankruptcy Code. The principal balance owing on the truck at the time the debtor filed bankruptcy was $6,404.84. Under the proposed chapter 13 plan, Metrobank's secured interest in the vehicle was valued at $4,000 with interest, while the remainder of the debt was unsecured, to be paid through the plan without interest. Although the plan provided that Metrobank's claim would be paid in full, Metrobank objected to the plan, arguing that it was fully secured and that interest should be paid on the entire debt.[1] By a joint stipulation of fact, the parties agreed that the wholesale value of the vehicle is $4,000 and the retail value is $6,500. The bankruptcy court ruled that the bank was only secured to the extent of the wholesale value of the vehicle. The district court affirmed the bankruptcy court's ruling.

### II.

Section 1325(a)(5)(B) of the Bankruptcy Code provides that, if a debtor in chapter 13 intends to retain property subject to a lien, the secured creditor must receive the present value of its allowed secured claim. Unless the creditor's present value is preserved, confirmation cannot occur over the creditor's

---

1. Because the debtor's plan proposes to pay unsecured claims in full, the only issue in the present case is the amount of interest to be paid. The parties estimate that perhaps $150 in interest is in dispute in this case.

objections. 11 U.S.C. § 1325(a)(5)(B). The amount of a secured claim is determined by 11 U.S.C. § 506(a), which provides in relevant part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property....

11 U.S.C. § 506(a).

Courts interpreting section 506(a) have placed varying importance on the statute's two clauses, resulting in disagreement as to the proper valuation method of a creditor's secured claim. One line of cases determines that the decisive language of section 506(a) is the language of the first sentence which provides that the creditor's claim is secured to the extent of the value of such creditor's interest in the estate's interest in such property. *See, e.g., In re Mitchell,* 954 F.2d 557, 560 (9th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992); *In re Overholt,* 125 B.R. 202, 214 (Bankr.S.D.Ohio 1990). The proponents of this theory contend that, based on the language of the first sentence of section 506(a), the property interest being valued is the creditor's lien interest in the collateral and not the debtor's ownership interest. According to this theory, because a lien is simply a right to take possession of the collateral and sell it in satisfaction of an obligation, the value of the lien is equal to the amount the creditor could receive upon sale of the collateral, or, in other words, the wholesale value of the collateral.

A second line of cases focuses instead on the language of the second sentence of section 506(a) which provides that the creditor's lien interest must be valued in light of the purpose of the valuation and the proposed disposition or use of the collateral. *See, e.g., In re Rash,* 31 F.3d 325, 329 (5th Cir.1994); *In re Green,* 151 B.R. 501, 504 (Bankr. D.Minn.1993). Under this theory, where the debtor intends to retain and use the collateral, the value of the creditor's secured interest should be based upon the replacement cost to the debtor, or the retail value of the collateral. "[W]hen a debtor intends to continue use of creditor's collateral, the Debtors are acknowledging the value of the collateral to be greater than if liquidated." *In re Rash,* 31 F.3d at 329 (quoting *In re Penz,* 102 B.R. 826, 828 (Bankr.E.D.Okla.1989)). As the court wrote in *Green:*

It is true that the plain meaning of the first sentence of section 506(a) requires a valuation of the creditor's lien interest in the collateral. However, the fact that a lien in property gives the lienholder a right to repossess and sell the collateral does not automatically mean that the value of the lien is equal to the amount that the creditor would receive upon disposition of the collateral in satisfaction of its lien. It must be remembered that a lien is fundamentally a *security* interest which secures payment of an obligation. To value such an interest in property based solely on the amount that could be realized upon sale of the collateral ignores the value associated with the right to receive the stream of payments that the lien secures.

*In re Green,* 151 B.R. at 505 (emphasis in original). Therefore, according to this theory, "the value of the creditor's lien is derived from the stream of payments that the lien secures, rather than the right to foreclose, since no liquidation of the collateral is contemplated." *In re Rash,* 31 F.3d at 329 (quoting *In re Green,* 151 B.R. at 504). Nor should the costs associated with the sale of the collateral be deducted since no sale is contemplated. Because the value of the creditor's lien is to be determined in light of the debtor's intended use of the collateral and the purpose of the valuation, the value will be dictated by the facts of each particular case. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5854, 6312 ("[C]ourts will have to determine value on a case-by-case basis.").

We adopt the reasoning of the Fifth Circuit in *In re Rash,* and other courts that have focused on the second sentence of section

506(a), and we now conclude that the value of Metrobank's lien interest is properly based on the retail value of the collateral without deduction for costs of sale. We agree with the Fifth Circuit that the retail valuation method is the only method that gives full effect to the entire language of section 506(a). "If the first sentence of § 506(a) were interpreted to mean that the value must be fixed at the amount which the creditor would receive on foreclosure, then the last sentence of the statute which provides that the value should be determined in light of the purpose of the valuation and of the proposed disposition or use of the property, would be surplusage." *In re Rash*, 31 F.3d at 329 (quoting *In re Courtright*, 57 B.R. 495, 497 (Bankr.D.Or.1986)). Under the wholesale valuation method, the creditor's interest would always be valued at the amount the creditor would receive upon disposition of the collateral, regardless of the purpose of the valuation or of the proposed disposition or use of the property. The wholesale method would not be affected by whether the debtor intended to release the property or intended, instead, to retain and use the property. Rather, where a debtor intends to retain and use the collateral, the purpose of the valuation is to determine the amount an undersecured creditor will be paid for the debtor's continued possession and use of the collateral, not to determine the amount such creditor would receive if it hypothetically had to repossess and sell the collateral. Such an interpretation ignores the express dictates of section 506(a).

Applying these principles to the present case, we conclude the amount of Metrobank's secured claim is the lesser of the principal balance of the debt or the retail value of the encumbered vehicle, without deduction for costs of repossession or sale.

The judgment of the district court is reversed and the case is remanded for proceedings consistent with this opinion.