**In re Sandra Jane GALLUP, Debtor.**

**Bankruptcy No. 95–43352–2–13.**

United States Bankruptcy Court,
W.D. Missouri.

April 22, 1996.

Robert G. Fisher, Independence, MO, for debtor.

Richard V. Fink, Chapter 13 Trustee, Kansas City, MO.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Debtor filed for rehabilitation under Chapter 13. The standing Chapter 13 Trustee found several problems with the listed income, the listed expenses and the value placed on debtor's automobile. It appears to the Court that the amended schedules I and J cure the income and expense concerns, although the Court suggests that the Trustee check debtor's tax return next spring to ascertain the gross income for the year.

■ The valuation of the motor vehicle is not resolved. Debtor's counsel seeks to value the automobile at its average wholesale or loan value as shown by the local NADA book. The Trustee seeks to value the vehicle at its average retail value as shown by the local NADA book. The issue arises in determining the amount that 11 U.S.C. § 1325(a)(4) would require the debtor to pay to unsecured creditors. If the average retail value is used, debtor must increase the amount to be paid to said unsecured creditors to insure that "each allowed unsecured claim is [paid] not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date." 11 U.S.C. § 1325(a)(4).

The Trustee cites *In re Trimble*, 50 F.3d 530 (8th Cir.1995), in support of his position. The debtor's counsel suggests that *Trimble* applies only as between an oversecured creditor and the debtor, and not in 11 U.S.C. § 1325(a)(4) considerations. For reasons discussed herein, this Court disagrees and rules for the position championed by the Chapter 13 Trustee.

Counsel for the debtor is quite correct in stating that *Trimble* involves a valuation dispute between an oversecured creditor and a debtor. However, the opinion seems to this Court to go beyond that narrow set of facts. The court therein quoted approvingly from Judge Dreyer's opinion in *In re Green*, 151 B.R. 501 (Bankr.D.Minn.1993), that involved an undersecured creditor and a debtor wherein the facts were clearly different.

Also the Eighth Circuit said:

We adopt the reasoning of the Fifth Circuit in *In re Rash*, and other courts that have focused on the second sentence of section 506(a).... "If the first sentence of § 506(a) were interpreted to mean that the value must be fixed at the amount which the creditor would receive on foreclosure, then the last sentence of the statute which provides that the value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of the property would be surplusage." *In re Rash*, 31 F.3d [325,] at 329 (quoting *In re Courtright*, 57 B.R. 495, 497 (Bankr.D.Or.1986)).

*Trimble*, 50 F.3d at 531–32.

Indeed *Rash* itself dealt with an undersecured creditor who claimed that retail value was what it could obtain if the vehicle was surrendered to it instead of being retained by the debtor and that debtor's plan did not pay the undersecured creditor what it would receive in a Chapter 7, thus violating 11 U.S.C. § 1325(a)(5).

■ It is true that none of the reported cases deal with the precise issue raised herein; none of the cases have involved a Chapter 13 Trustee seeking to increase a Chapter 13 debtor's contribution to her plan because of the difference between wholesale and retail value. However, to adopt the principle that the valuation should be different for the (oversecured or undersecured) creditor than it is for the Trustee creates a disparity that this Court declines to adopt. Common sense dictates that if retail value is the proper measure when a creditor (oversecured or undersecured) is involved, that same standard should be used for 11 U.S.C. § 1325(a)(4) when a Trustee raises the issue. This Court therefore holds that the determining factor is the debtor's use. If the debtor retains possession of the collateral, the debtor must pay (whether it be to an oversecured or undersecured creditor, or to the standing Chapter 13 Trustee for 11 U.S.C. § 1325(a)(4) considerations) the retail value.[1] This Court uses the

---

1. Use of the term "fair market value" or "retail value" or "going concern value" is merely a

term "retail value" because the Eighth Circuit used same.

■ If the debtor surrenders the collateral, the valuation will be based upon the creditor's recovery. While this may seem somewhat inequitable, it is based solely on the debtor's decision.

The debtor's Motion to Revisit Order Denying Confirmation is DENIED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

So ORDERED.

matter of semantics. *See In re Taffi,* 68 F.3d 306 (9th Cir.1995) (fair market value); *In re Winthrop Old Farm Nurseries, Inc.,* 50 F.3d 72 (1st Cir.1995) (fair market value); *In re Trimble,* 50 F.3d 530 (8th Cir.1995) (retail value); *In re Rash,* 31 F.3d 325 (5th Cir.1994) (going concern value). *See also In re Johnson,* 145 B.R. 108, 115 n. 10 (Bankr.S.D.Ga.1992):

"Wholesale," "foreclosure," "liquidation," or "quick sale" values describe a proposed disposition of property by surrender to the creditor and prompt conversion of the property by the creditor to cash, usually in accordance with State foreclosure law. "Retail," "going concern," "replacement cost," or "rehabilitation" values describe a proposed retention and use of property in the debtor's ongoing financial reorganization.