### In re INTER–CITY BEVERAGE CO., INC., and Metro Distributors of Kansas, Inc., Debtors.

**Bankruptcy No. 96–41554–2–11.**

United States Bankruptcy Court, W.D. Missouri.

July 3, 1997.

James E. Bird, Kansas City, MO, for Inter–City Beverage Co., Inc.

## ORDER

FRANK W. KOGER, Chief Judge.

General Motors Acceptance Corporation (GMAC) has filed a Motion to Amend Judgement and to Lift the Automatic Stay in which it seeks, in the alternative, that the Court make additional findings of fact under Fed. R. Bankr.P. 7052 as to this Court's January 13, 1997, order approving the sale of Debtors' assets, or to alter or amend the order under Fed. R. Bankr.P. 9023 or for relief under Fed. R. Bankr.P. 9024, or for a new trial under Fed. R. Bankr.P. 9023, or for relief from the automatic stay pursuant to 11 U.S.C. § 362.[1] Big Sky Holdings, LLC, filed a response and objection to GMAC's motion. GMAC filed additional suggestions in support of its motion. Debtor did not file a response. After hearing on the motion, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052.

As GMAC alleges, it is a secured creditor of Inter–City Beverage Co., Inc., one of the debtors herein, and holds a security interest in two vehicles, a 1994 Chevrolet Blazer and a 1996 Chevrolet Astro Van, pursuant to Installment Sales Contracts entered between Inter–City and GMAC. GMAC filed a proof of claim with respect to both vehicles. Inter–City has defaulted on both vehicles and has failed to make any payments on either of the contracts since July, 1996.

On January 13, 1997, this Court entered an order authorizing the sale of certain assets of Inter–City (as well as co-debtor Metro Distributors) to Big Sky Holdings, LLC, free and clear of debts, charges, liens, claims, encumbrances and interests. As the parties are familiar with the facts surrounding this sale and the history of this case, further factual detail as to the background is unnecessary at this point. The sole issue now before the Court is whether the Purchase Agreement and order approving the sale of assets included the GMAC vehicles and if so, to what is GMAC entitled?

■ The first question is whether the Purchase Agreement, as approved by the Court, included the sale of GMAC's vehicles to Big Sky. After motion and hearing, on January 13, the Court approved the sale of Debtor's assets free and clear of all liens, debts, encumbrances and interests, obligations, liabilities, contractual commitments, and claims. "Assets" are defined in the Purchase Agreement at paragraph 1(b) as follows:

Subject to the provisions of Section 1(h) hereof relating to the Excluded Southern Equipment, and 1(e) hereof relating to claims and causes of action, the assets ("Assets") shall include, without limitation, the Debtor's interest in the following property, wherever located: real property (other than the Real Estate), personal property, equipment (including leasehold interests in equipment subject to capitalized leases to the extent assignable), merchandise inventory (the "Inventory"), executory contracts, leases, technology, processes, patents, trademarks, trade names and other intellectual property and all other assets, tangible and intangible, including distributorship rights and claims and causes of action (other than the claims and causes of action set forth in Section 1(e) hereof), accounts receivable, and cash on hand, used in connection with Debtor's business and operations (the "Acquired Business"), provided that on or prior to the Due Diligence Deadline (as defined in Section 10(g)), Purchaser shall have the right to reject all or any portion of any of the Assets without adjustment of the Purchase Price, in which event such rejected Assets shall not be deemed Assets for purposes of this Agreement. Listed on the attached *Exhibit 1(b)* is a list of all Assets other than Inventory owned by the Debtor.

Exhibit 1(b) [actually denominated "1(B)" rather than "1(b)"] lists, among other things, "All tangible personal property other than items included on Southern Leasing Corporation promissory notes Nos. 46, 47 and 48."

The Court finds that this language clearly includes the GMAC vehicles. Although the

---

1. Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 through 1330 (1996).

vehicles were not specifically listed, the Agreement clearly contemplated the sale of *all assets* of the debtors except those expressly omitted. The vehicles were not expressly omitted. Unless an item was to be omitted from the sale, none of the assets were specifically mentioned. The Court finds, therefore, that the four corners of the agreement and order unquestionably demonstrate that the GMAC vehicles were included in the sale of assets to Big Sky.

■ The next question, then, is to what is GMAC entitled pursuant to its security interests and liens, and who is required to pay for it? Again, the language of the documents directly provides the answer to those issues. Under the clear language of the Purchase Agreement and the order, Big Sky took the vehicles free and clear of any security interest or lien held by GMAC against them. Consequently, Big Sky is not responsible to GMAC. It is equally clear that according to the January 13, 1997, order approving the sale, GMAC's liens attached to the proceeds of the sale. The Order provides:

J. Except as otherwise set forth in the Purchase Agreement, all persons and entities holding Encumbrances of any kind and nature be and hereby are barred from asserting such Encumbrances against Purchaser and/or the Assets and, effective upon the transfer of the Assets to Purchaser at the Closing, the Encumbrances shall attach to the proceeds of the Sale with the same force, validity, priority and effect, if any, as the Encumbrances formerly had against the Assets.

K. This Order: (a) is and shall be effective as a determination that, upon Closing, all Encumbrances existing as to the Assets conveyed to Purchaser have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated, and that the conveyances described herein have been made free and clear of all such Encumbrances, with the Encumbrances to attach to the proceeds of the Sale ....

"Encumbrances" is defined in the Purchase Agreement as including "liens, debts, encumbrances and interests, obligations, liabilities, contractual commitments, [and] claims ...," and would therefore include GMAC's liens and security interests. Consequently, it is apparent from this language that Big Sky took the vehicles free of GMAC's security interests and liens and that those security interests followed the proceeds of the sale into the hands of the debtor. As a result, the Court finds that under the terms of the Purchase Agreement and order authorizing the sale, the debtor is liable to GMAC for the value of the liens.

■ GMAC presented testimony that the outstanding balances on the Blazer and Astro van are $17,552.86 and $17,220.71, respectively, and the NADA retail values are $17,300 and $15,525. The Court finds that GMAC's lien is for the replacement value of the vehicles rather than the outstanding amount of the loans. Under § 506(a), and the very recent Supreme Court case, *Associates Commercial Corp. v. Rash,* —— U.S. ——, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), GMAC is secured as to the replacement value of the vehicles. *Accord In re Trimble,* 50 F.3d 530, 531–32 (8th Cir.1995) (ruling that replacement value was the proper valuation in the Eighth Circuit). Although this is not a Chapter 13 cram-down situation as was the case in *Rash* and *Trimble,* this Court believes § 506(a) applies to the case at bar, so the rationales of *Rash* and *Trimble* in interpreting that situation apply here as well. Hence, when Debtors filed their petition in bankruptcy, by operation of § 506(a), GMAC was secured as to the replacement value of the vehicles. Following the sale of the vehicles, the security interest passed with the proceeds so GMAC now holds a secured claim against the debtor's estate for the replacement values of the vehicles, which according to GMAC's representation as to the NADA retail value are $17,300 for the Blazer and $15,525 for the Astro van, for a total secured claim of $32,825.00. Fortunately, Inter–City's Plan of Liquidation dated May 30, 1997, and filed June 4, 1997, already contains a provision for GMAC's claim, treating it as a Class 3 Secured Claim. This classification is appropriate with the exceptions that GMAC no longer holds a lien against the vehicles themselves but rather holds a *secured claim* against the proceeds of the sale to Big Sky, and that the secured portion of the claim is hereby determined to be in the amount of $32,825.00 pursuant to § 506(a).

■ Finally, the Court must address GMAC's contention that its counsel did not receive notice of the motion to approve the sale of assets or of the hearing regarding the sale. As GMAC's rights were affected by the Purchase Agreement, it was certainly entitled to notice and opportunity to object to the sale. GMAC concedes it received notice of the motion to approve the sale of assets and the hearing, both of which were filed on December 12, 1996. If GMAC is alleging lack of adequate notice because its attorney (who entered an appearance the day after the motion to approve sale and hearing were filed) did not receive notice, the Court must reject that argument. Not only does GMAC concede it received notice, another attorney for GMAC testified at the hearing that she had been having discussions with the debtor's attorney as early as December 11 regarding the status of the vehicles under the terms of the sale to Big Sky. There is no question, therefore, that GMAC and its attorney had notice and knowledge of the pending sale and were concerned about its effect on GMAC. This Court conducted the hearing on the motion to approve sale on December 23, 1996, at which time two parties voiced objections to the motion. GMAC was not one of them. The Court therefore finds GMAC had adequate notice of the motion and hearing and simply chose not to object.

On that point, GMAC next contends it did not object to the sale because it was led to believe by Debtor that the vehicles were not to be sold as part of the Purchase Agreement and that GMAC's attorney participated in discussions with Debtor and Big Sky regarding the issue of whether Big Sky wished to purchase the vehicles. Big Sky denies any allegations that it participated in any "negotiations" or discussions with GMAC regarding the vehicles, except to inform GMAC that it considered the vehicles to be included in the purchase of assets as described above. Big Sky maintains that it always considered the vehicles to be included in the assets sold under the Purchase Agreement. Further, Mr. John Meier, the representative from Inter–City with whom GMAC spoke, testified he only told GMAC that he "was unsure" as to the status of the vehicles and that GMAC should contact the attorneys. He also testified that he had always thought the deal included all of the assets and it was his impression that none of the assets or equipment had been excluded (other than certain causes of action).

The Court therefore finds that GMAC had adequate notice of the motion to approve the sale of assets, that it had an opportunity to object, and that it chose not to do so due to a misinterpretation of the clear terms of the Purchase Agreement. As discussed above, the documents were sufficiently clear to put GMAC on notice that if it desired to have its vehicles excluded from the sale of assets, it should have voiced its objection at the appropriate time.

## CONCLUSION

For the foregoing reasons, the Court hereby finds that the Purchase Agreement which was approved by this Court by Order dated January 13, 1997, included the sale of the 1994 Chevrolet Blazer and the 1996 Chevrolet Astro Van against which GMAC asserts a security interest. Pursuant to the Purchase Agreement, Big Sky acquired said vehicles free and clear of all of liens and security interests held by GMAC against them. Further, the liens and security interests GMAC asserts followed the proceeds of the sale into the debtor's estate. GMAC therefore holds a secured claim against the funds in the debtor's estate, which, pursuant to § 506(a), has been reduced to the replacement value of said vehicles, or $32,825.00. GMAC is therefore DIRECTED to release the liens and to produce the titles on said vehicles to Big Sky. GMAC is to be treated as provided in Inter–City's Plan of Liquidation dated May 30, 1997, as a Class 3 Secured Creditor with an allowed secured claim in the amount of $32,825.00. GMAC's Motion is DENIED in all other respects.