### In re Donald L. HILL, and Donna M. Hill, Debtors.

### No. 03–52883–659.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

July 1, 2004.

John V. LaBarge, Jr, St. Louis, MO, Chapter 13 Trustee.

Bryan Voss, O'Fallon, MO, for Debtors.

Michael A. Gould, N. Kansas City, MO, for Creditor.

### ORDER

KATHY ANN SURRATT–STATES, Bankruptcy Judge.

The matters before the Court are Debtors' Objection to Claim # 9 and Creditor's Response to Debtors' Objection to Proof of Claim No. 9. No supplemental pleadings were filed by the parties. A hearing on the matter was held on March 22, 2004, at which Debtors and Creditor appeared by counsel. Debtor, Donald Hill, and appraisers for both Debtors and Creditor presented testimony. Upon consideration of the record as a whole, the Court makes the following FINDINGS OF FACT:

Debtors Donald and Donna Hill ("Debtors") filed for protection under Chapter 13 of the Bankruptcy Code on September 26, 2003. Debtors' first meeting of creditors was held on November 3, 2003. On Debtors' Schedule "D" and in Debtors' Plan, Debtors listed the value of their 2000 Freightliner Truck (the "Truck") at $25,000.00. On November 25, 2003, CitiCapital Commercial Corporation ("Creditor") filed Claim No. 9 in the amount of $50,422.97. Debtors thereafter contacted the dealership from which they originally purchased the Truck and obtained an appraisal of $26,800.00 for the Truck. Debtors therefore contend that the reasonable value of the Truck is $26,800.00. Debtors filed Debtors' Objection to Claim No. 9 filed by CitiCapital Commercial Corporation on December 29, 2003. Creditor filed Response of CitiCapital Commercial Corporation f/k/a Associates Corporation to Debtors' Objection to Proof of Claim No. 9 on January 6, 2004.

Creditor is the holder of a secured claim on the Truck by contract, which constitutes a first lien on the Truck. The lien was perfected by notation on a Certificate of Title issued by the Director of Revenue of the State of Missouri on November 8, 1999. Creditor lists a retail value of the collateral at $49,175.00 and a wholesale value of $40,975.00, which Creditor obtained from the Automotive Truck Dealer/National Association of Automobile Dealer's Guide ("the Guide"). Creditor therefore contends that the retail value of the Truck is $49,175.00 and the wholesale value is $40,975.00 respectively.

Debtors claim that the value of the Truck is $26,800.00 and requests that Claim # 9 be paid $26,800.00 secured and $23,622.97 unsecured. Creditor claims that Debtors' valuation of the Truck is incorrect and inaccurate since the Truck has a value closer to Creditor's filed claim of $50,422.97, which should replace Debtors' value as the correct value. The Court will resolve this issue below.

523

## CONCLUSIONS OF LAW

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 1334, 151, and 157, and Local Rule 81–9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (K) which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409(a).

■ Before a plan is confirmed under Chapter 13, the requirements of 11 U.S.C. § 1325(a)(5)(B) must be met where a debtor proposes to invoke the "cram down" power. Under the "cram down" power, the debtor retains possession of the secured property even if the creditor objects [1]; however, the creditor retains its secured lien and the debtor must provide payments equal to the present value of the secured claim (i.e. collateral) upon confirmation of the plan [2].

The valuation of such claims is determined pursuant to 11 U.S.C. § 506(a) (2004), which provides that "[a]n allowed claim of a creditor secured by a lien on property...is a secured claim to the extent of the value of such creditor's interest...in such property...and is an unsecured claim to the extent that the value of such creditor's interest... is less than the amount of such allowed claim." "Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use..." Id.

■ Debtors' Chapter 13 Plan ("Plan") was confirmed on December 12, 2003, and proposed that Debtors retain the Truck for use in the transportation business and pay Creditor over the term of the plan at the present value of the Truck. Debtors determined the Truck to be valued at $25,000.00 in its Plan. Creditor filed Response of CitiCapital Commercial Corporation f/k/a Associates Corporation to Debtors' Objection to Proof of Claim No. 9 alleging that the Truck had a fair market value of $49,175.00 and pursuant to Fed. R. Bankr.P. 3012, requested that this Court conduct a hearing to determine the appropriate value of the Truck.

■ The first issue is which method should be used to value the Truck. "[T]he value of property retained because the debtor has exercised the § 1325(a)(5)(B) 'cram down' option is the cost the debtor would incur to obtain a like asset for the same 'proposed use.'" *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 965, 117 S.Ct. 1879, 1886, 138 L.Ed.2d 148 (1997). *Rash* extends beyond its holding to suggest, in footnote six, that while the replacement value standard governs cram down cases, the individual bankruptcy courts should apply this standard on the basis of the evidence presented. *Id.* Short of providing a standard valuation scheme, the *Rash* Court suggests that individual bankruptcy courts deduct any warranties, inventory storage, reconditioning costs, or modifications to the property, where retail value is the replacement value used by the reviewing court. *Id.* This method of valuation fits squarely within the law applied in this Circuit to property valuations. *See In re Trimble,* 50 F.3d 530, 532 (8th Cir. 1995)(the replacement value of secured property is the retail value of the collater-

1. "[T]he plan provides that the holder of such claim retain the lien securing such claim." 11 U.S.C. § 1325(a)(5)(B)(i) (2004).

2. "[T]he value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii) (2004).

**524**

al). Therefore, the replacement value of the Truck lies in its retail value.

The next issue is from which date the valuation should be made. Bankruptcy Courts in this Circuit have taken different approaches to find an appropriate date for determining the value of collateral.[3] Thus, the case law is split on whether the appropriate date of valuation is the date the petition is filed or the date the plan is confirmed. *Compare In re Owens*, 120 B.R. 487, 492 (Bankr.E.D.Ark.1990)(holding that the value of the collateral is determined on the plan of confirmation) *with In re Inter–City Beverage Co.*, 209 B.R. 931 (Bankr.W.D.Mo.1997)(where the court applied *Rash* and *Trimble* to hold that the replacement value of the property is determined on the date the debtor files a bankruptcy petition). Recently, a Bankruptcy Court in the Western District of Missouri held that the date of the contested hearing is the starting point for making a determination of the replacement value. *In re Podnar*, 307 B.R. 667 (Bankr.W.D.Mo. 2003). However, this Court finds that the appropriate date for deciding the value of secured collateral is the date of confirmation since this action arises out of § 1325(a)(5)(B)(i)-(ii). Therefore, the retail value of the Truck shall be determined from the date the Plan was confirmed.

The Bankruptcy Court for the Eastern District of Missouri has also developed its own method for the treatment of secured vehicle claims. Pursuant to L.B.R. 3015-3(J), "the value of such vehicles shall be construed based on the evidence presented in conjunction with the Court's Vehicle Valuation Policy (the 'Policy')." The Policy requires that the value of a vehicle should be equal to 95% of the National Automobile Dealers Association (NADA) (Central Edition) retail value for the first three years of age if neither party presents any conflicting evidence to challenge such value. The Policy further requires that the vehicle be depreciated at a rate of 2% for each year, after the first three years, up to a maximum deduction of 15%. This Court will follow the Policy in making any determinations as to the value of the Truck and supplement its findings with any relevant facts.

At the hearing, Debtors' appraiser suggested that the retail value of the Truck is approximately $26,800.00 since the Truck has 726,000 miles and is no longer in good condition. Debtors' appraiser noted that trucks with high mileage are difficult to sell given the attractive interest rates purchasers now receive on new trucks. However, on cross examination, Debtors' appraiser acknowledged that he recently sold a model similar to the Truck for $30,000.00 with high mileage. Furthermore, Debtors' appraiser made his determination without consulting the Guide. In contrast, Creditor's appraiser testified that the Truck is in good working order and valued the Truck at $41,135.21 although it had high mileage and needed minor repairs. Creditor's appraiser utilized the Guide and conducted a market data analysis to arrive at his figure. The Court rejects the appraisal made by Debtors' appraiser as too low since it is based primarily on the mileage of the Truck and not on the Guide. The

3. "Footnote six provides a 'loophole' that allows bankruptcy courts to use any valuation method they deem appropriate to identify the replacement value...footnote six dissolves any predictability or uniformity the Court sought to achieve. Therefore, the Court creates a consistent term, replacement value, for valuation, but allows courts to maintain the multiple approaches under this new rubric." Walters, Edie, *NOTE: AN AMBIGUOUS ANSWER: THE EFFECT OF ASSOCIATES COMMERCIAL CORPORATION V. RASH ON CHAPTER 11 AND CHAPTER 13, COLLATERAL VALUATION*, 35 Hous. L.Rev. 953, 969 (Fall 1998).

Court also rejects the valuation of Creditor's appraiser insofar as it is based on averaging the prices of similar trucks on the market since this approach is not an adequate measure of retail value.

The Court finds that the proper starting point for valuing an automobile is the Guide's retail value since it provides a standard price of a given vehicle in the automobile market. According to the November/December 2003 issue of the Guide, the retail value of the Truck is $38,700.00 before making adjustments to reflect the appropriate value on the date of confirmation. A preliminary adjustment must be made to account for the high mileage on the Truck. The first step is to determine the appropriate mileage per year for the vehicle's model, year, and type. The Guide provides that the standard mileage per year for the make and model of the Truck is between 140,000—170,000 miles, which averages out to be 155,000 miles per year. The Truck is four (4) years old, so the Truck should have normal mileage of 620,000 (155,000 × 4) miles. The next step is to determine whether the vehicle is outside the Guide's standard mileage and multiply the difference by $0.055 per mile. The Truck is outside the Guide's standard value since it had been driven 663,000 miles at the time of confirmation instead of a normal mileage of 620,000 miles. The difference between 663,000 miles and 620,000 miles is 43,000 miles. The product of 43,000 miles times $0.055 is $2,365.00.

The Truck price is adjusted down by the amount of $2,365.00 from $38,700.00 to $36,335.00. Next, the Truck has a 13 speed transmission, so the price of the Truck is adjusted upward $2,500.00 to $38,835.00 under the Guide. It is also uncontroverted that the Truck contains a single rear axle, which adjusts the price downward $2,600.00 to $36,235.00 pursuant to the Guide. The Guide therefore outlines a retail value of $36,235.00 after each adjustment is made. The Truck is a 2000 model, so the Truck was three years old prior to confirmation. Consequently, the Truck's value is further adjusted down to $34,423.25 which equals 95% of the Guide's value pursuant to the Policy. Therefore, the Court finds that the proper secured value of the Truck is $34,423.25 with the remaining $15,999.72 to be paid as unsecured. Therefore,

**IT IS ORDERED THAT** Debtors' Objection to Claim # 9 is SUSTAINED, IN PART, in that Claim # 9 is allowed as a secured claim in the amount of $34,423.25 and an unsecured claim in the amount of $15,999.72.